Christopher R. Kelly
Jennifer C. Barry*
Brendan P. McGlynn*
Patricia A. Paw*
**SECURITIES AND EXCHANGE COMMISSION**
**Philadelphia Regional Office**
**1617 JFK Boulevard, Suite 520**
**Philadelphia, PA  19103**
KellyCR@sec.gov
***Not admitted in the U.S. District Court for the Southern District of New York**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **19-CV- 6387 (___)** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **DONALD G. BLAKSTAD and MARTHA PATRICIA BUSTOS,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint

against defendants Donald G. Blakstad ("Blakstad") and Martha Patricia Bustos ("Bustos")

(collectively, "Defendants") and alleges as follows:

### SUMMARY

1.      Between at least April 2016 and July 2018, defendants Blakstad and Bustos

engaged in a multi-tiered insider trading scheme, which generated over $6.2 million in unlawful

profits.

2.      As an accountant in Illumina Inc.'s ("Illumina") finance department, and later as a

commercial business analyst, Bustos had access to—and a duty to keep confidential—material

nonpublic information concerning her employer's quarterly financial performance.  In breach of her duty, Bustos tipped this information to her close friend Blakstad concerning at least four different Illumina quarterly financial performance announcements.

3.     In an effort to conceal his trading, Blakstad enlisted two individuals to trade on his behalf ahead of two of the Illumina announcements.  He also tipped at least four other individuals, each of whom traded in advance of at least one of the four announcements.  Many of the unlawful trades involved out-of-the-money, near-expiration options contracts, which allowed Blakstad and his tippees to earn significant trading profits.

4.     In return for the tips, Blakstad rewarded Bustos lavishly.  For example, following one successful tip, Blakstad treated Bustos and several of her friends to an all-expense paid trip to New York, spending nearly $35,000 for first-class airfare, hotels, and meals for every member of the traveling party, including a $7,500 meal at New York's upscale restaurant Per Se.

5.     By engaging in the conduct described in this Complaint, Defendants violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

6.     The Commission brings this action pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as the Court may deem just and appropriate.

7.     This Court has jurisdiction over this action pursuant to Sections 21(d) and (e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), 78u-1, and 78aa].

8.      Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Among other things, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Southern District of New York.

## DEFENDANTS

9.      **Blakstad**, age 60, lives in San Diego, California, and Las Vegas, Nevada.  He is the sole employee of at least two entities, Midcontinental Petroleum Inc. and Northern Alternative Energy Shaokatan LLC, both privately held companies that purport to be involved in the development and production of alternative energy sources.

10.      **Bustos**, age 31, lives in San Diego, California, and from 2013 until she resigned on June 6, 2019, was an Illumina employee.  From 2013 to approximately November 2016, she worked as an accountant in Illumina's finance department, and from November 2016 until her resignation, she worked as a commercial business analyst.  Bustos traveled, socialized, and had a close friendship with Blakstad.  She was a certified public accountant licensed by the state of California in 2016 and 2017, but has since let her license lapse.

## OTHER RELEVANT INDIVIDUALS AND ENTITIES

11.      **Illumina** is a Delaware corporation headquartered in San Diego, California, and is a developer and manufacturer of human genome biomedical tools and drugs.  At all relevant times, the company's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the NASDAQ Global Select Market under the symbol ILMN.

12.      **Trader 1** is the founder and managing principal of Hedge Fund 1.  In June 2016, Trader 1 co-founded Advisory Firm with Trader 2.

13.     **Trader 2** is president and managing partner of a hedge fund.  In June 2016, Trader 2 co-founded Advisory Firm with Trader 1.

14.     **Hedge Fund 1** is a Delaware limited liability company that operates as an employee-owned hedge fund sponsor and advisor.  Trader 1 is the founder and managing principal of the company.

15.     **Advisory Firm** is a Delaware limited liability company that provides financial advisory and consulting services to its clients.  It was formed in June 2016 and is equally owned and controlled by Trader 1 and Trader 2.

16.     **Hedge Fund 2** is a Delaware limited partnership and serves as a pooled investment fund with zero assets under management.  Trader 1 is the sole managing member of the general partner of Hedge Fund 2.

17.     **Hedge Fund 3** is a Delaware limited liability company.  Trader 1 is the managing principal and the sole member of the company.

18.     **Tippee 1** is a business associate and personal friend of Blakstad.

19.     **Tippee 2** is a business associate of Blakstad.

20.     **Tippee 3** is a business associate and personal friend of Blakstad.

21.     **Trader 3** is a friend of Tippee 3.

22.     **Tippee 4** is a business associate and personal friend of Blakstad.

## COMMONLY-USED TRADING TERMS

23.     A stock option, commonly referred to as an "option," gives its purchaser-holder the option to buy or sell shares of an underlying stock at a specified price (the "strike" price) prior to the expiration date.  Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.

4

24.     A "call" option gives the purchaser-holder of the option the right, but not the obligation, to purchase a security at a specified strike price within a specific time period. Generally, the buyer of a call option anticipates that the price of the underlying security will increase during a specified amount of time.

25.     A "put" option gives the purchaser-holder of the option the right, but not the obligation, to sell a security at a specified strike price within a specific time period. Generally, the buyer of a put option anticipates that the price of the underlying security will decrease during a specified amount of time.

## FACTS

### Bustos Had Access to – and a Duty Not to Disclose – Material Nonpublic Information Concerning Illumina's Financial Performance

26.     From at least 2013 through August 2018, as an accountant in Illumina's finance division and then later as a commercial business analyst, Bustos received daily emails in advance of the company's quarterly performance announcements that contained nonpublic draft financial statements with preliminary profit and loss data related to Illumina's quarter-end financial performance. Bustos knew that the information contained in the daily emails related to Illumina's quarterly financial performance was material and nonpublic.

27.     Illumina adopted a set of policies and procedures designed to prevent insider trading by the company's officers, directors, employees and other related individuals (the "Insider Trading Policy"). The Insider Trading Policy, among other things, provided that all employees who possess material nonpublic information are: (1) prohibited from trading in Illumina's securities; and (2) prohibited from tipping material nonpublic information to any other person where such information may be used to his or her profit. The Insider Trading Policy stated that "financial results" and "projections of future earnings or losses" are examples of

information that, prior to public dissemination, should always be considered material and nonpublic.

28.     As an employee of Illumina, Bustos was required to comply with, and acknowledge receipt of, the Insider Trading Policy, which she did when she was hired in 2013. Bustos continued to certify compliance with the Insider Trading Policy annually.

### The April 18, 2016 Preliminary Revenue Announcement

29.     In advance of Illumina's April 18, 2016 preliminary revenue announcement, Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance for the first quarter of 2016.  In turn, Blakstad tipped Tippee 1 and Tippee 2 material nonpublic information, who both traded highly speculative Illumina securities in advance of the announcement.

30.     On April 18, 2016, after market close, Illumina announced preliminary first quarter 2016 revenue of $572 million, which was approximately $25 million below Wall Street estimates.  On April 19, 2016, Illumina's stock price closed at $136.88, which was $41.25, or nearly 23%, lower than its closing price on April 18.

31.     As a result of trading on the information, Tippee 1 and Tippee 2 generated illegal profits of approximately $322,625 and $23,381, respectively.

### Bustos Tips Blakstad

32.     In advance of the April 18, 2016 preliminary revenue announcement, Bustos was in possession of material nonpublic information concerning Illumina's financial performance. Specifically, Bustos knew Illumina would announce negative revenue results for the first quarter of 2016.

33.     Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance prior to Illumina's April 18, 2016 preliminary revenue announcement.

34.     On April 14, 2016, Blakstad called Bustos at approximately 12:29 PM EST, and they spoke for approximately three minutes.  Later that day, at approximately 1:43 PM EST, Blakstad again called Bustos, and they spoke for approximately six minutes.

**Blakstad Tips Tippee 1**

35.     Blakstad tipped Tippee 1 material nonpublic information concerning Illumina's financial performance prior to Illumina's April 18, 2016 preliminary revenue announcement.

36.     On April 14, 2016, at approximately 12:29 PM EST, within seconds of ending the call with Bustos, Blakstad called Tippee 1 twice, but was unable to connect.

37.     At approximately 12:35 PM EST, Tippee 1 returned Blakstad's calls, and the two spoke for approximately 90 seconds.

38.     At about 12:37 PM EST, and then again at approximately 12:44 PM EST, Tippee 1 called and spoke to his stockbroker, who then entered the first order in Tippee 1's account to buy Illumina put options.

39.     Between April 14 and April 18, 2016, Tippee 1 purchased 300 near-expiration, out-of-the-money Illumina put options contracts for a total purchase price of $98,705.

40.     On April 19, 2016, the next trading day after Illumina announced its first quarter 2016 preliminary revenue estimate, Tippee 1 sold all 300 Illumina put options contracts and realized profits of $322,625.

**Blakstad Tips Tippee 2**

41.     On April 14, 2016, at approximately 2:00 PM EST, and again around 2:13 PM EST, Blakstad called Tippee 2, but was unable to connect.   At approximately 2:39 PM EST, Tippee 2 returned Blakstad's calls, and the two spoke for approximately 16 minutes.

42.     Immediately upon ending the call with Blakstad, Tippee 2 called his stockbroker and the two spoke for almost 11 minutes.  During this conversation, Tippee 2's stockbroker entered an order for 10 near-expiration, near-the-money Illumina put options contracts for $9,026.

43.     On April 18, 2016, the day of the announcement, Tippee 2 wired $250,000 to Blakstad for a purported investment into a Blakstad-controlled company.

44.     On April 19, 2016, the next trading day after Illumina announced its first quarter 2016 preliminary revenue estimate, Tippee 2 sold all 10 Illumina put options contracts and realized profits of $23,381.

**The October 10, 2016 Preliminary Revenue Announcement**

45.     In advance of Illumina's October 10, 2016 preliminary revenue announcement, Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance for the third quarter of 2016.  In turn, Blakstad traded in highly speculative Illumina securities and tipped Tippee 1 and Tippee 3 material nonpublic information, who also traded in similarly speculative Illumina securities.

46.     After market close on October 10, 2016, Illumina announced third quarter revenue of $607 million – approximately $20 million short of Wall Street's estimates of Illumina's revenue for the third quarter of 2016, as well as Illumina's previously-released

revenue guidance for that quarter.  On October 11, 2016, the following day, Illumina's shares closed at $138.99, a 25% decrease from the previous day's closing price.

47.     As a result of trading on the information, Blakstad, Tippee 1, and Tippee 3 generated illegal profits of approximately $2,704,815, $396,394, and $1,013,834, respectively.

**Bustos Tips Blakstad**

48.     In advance of the October 10, 2016 preliminary revenue announcement, Bustos was in possession of material nonpublic information concerning Illumina's financial performance.  Specifically, Bustos knew Illumina would announce negative revenue results for the third quarter of 2016.

49.     Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance in advance of Illumina's October 10, 2016 preliminary revenue announcement.

50.     Between Thursday, October 6, 2016, and Sunday, October 9, 2016, Bustos and Blakstad exchanged 18 telephone calls.

**Blakstad Enlists Trader 1 and Trader 2 to Conceal his Trading**

51.     When Bustos and Blakstad were communicating between October 6, 2016, and October 9, 2016, Blakstad engaged Advisory Firm and industry professionals Trader 1 and Trader 2—with whom he already had an investment-related business relationship—to conceal his anticipated purchase of Illumina securities based on material nonpublic information.

52.     Blakstad had a series of telephone calls with Trader 1 and Trader 2, including a call with Trader 2 at 12:12 PM EST on Saturday, October 7, 2016.  In one or more of these telephone calls, Blakstad, Trader 1, and Trader 2 discussed purchasing Illumina put option contracts in advance of Illumina's October 10, 2016 preliminary revenue announcement.

53.     Since there was insufficient time in advance of the announcement for Trader 2 to open a separate brokerage account for the benefit of Blakstad, Trader 2 agreed to purchase Illumina put options contracts on Blakstad's behalf in Trader 2's personal brokerage account. However, Trader 2's personal brokerage account had not yet been authorized to trade options.

54.     On or about Saturday, October 8, 2016, while Trader 2 sought options trading approval in his personal brokerage account, Blakstad transferred $110,000 to Trader 2's bank account.

55.     On Sunday, October 9, 2016, Blakstad instructed Trader 1 and Trader 2 on how to allocate his $110,000 to purchase certain Illumina put options series, including the exact strike prices and expiration dates, all of which were out-of-the-money and set to expire on October 21, 2016.

56.     On Monday, October 10, 2016, Trader 2 bought 1,542 put options at a total cost of just under $110,000 in his personal brokerage account.

57.     Blakstad's options purchases accounted for a large percentage of Illumina trading volume that day, ranging from 51% to 100% of total trading volume for the various series purchased.

58.     On October 11, 2016, the next trading day after Illumina's announcement, Trader 2 sold all of Blakstad's put options contracts for a realized profit of $2,704,815.  The same day, Trader 2 began transferring to Blakstad $2,568,923 – representing Blakstad's share of trading profits and principal – and Trader 1 and Trader 2 retained $245,892 in exchange for facilitating Blakstad's Illumina trading.

**Blakstad Tips Tippee 1**

59.     Blakstad tipped Tippee 1 material nonpublic information concerning Illumina's financial performance prior to Illumina's October 10, 2016 preliminary revenue announcement.

60.     On or about Saturday, October 8, 2016, and Sunday, October 9, 2016, while Blakstad was communicating with Trader 1 and Trader 2, Blakstad also exchanged at least 10 telephone calls with Tippee 1.

61.      On Monday, October 10, 2016, Tippee 1 bought 171 near-expiration, out-of-the-money put options contracts for a total purchase price $51,982.

62.     On October 11, 2016, the next trading day after Illumina's announcement, Tippee 1 sold all 171 of his put options contracts, realizing profits of $396,394.

**Blakstad Tips Tippee 3**

63.     Blakstad tipped Tippee 3 material nonpublic information concerning Illumina's financial performance prior to Illumina's October 10, 2016 preliminary revenue announcement.

64.     On or about Saturday, October 8, 2016, and Sunday, October 9, 2016, Blakstad exchanged at least eight telephone calls with Tippee 3.

65.     Conversations between Tippee 3 and his brokerage firm demonstrate the urgency in which Tippee 3 sought to purchase Illumina securities.

66.     In particular, Tippee 3 told an employee of his brokerage firm: "I want to be able to trade in options like immediately [and] the banks are closed."  He also said:  "It's incredibly frustrating to me because I need to get money into my account immediately."  When the employee asked how much he wanted to trade, Tippee 3 answered:  "$50,000… a hundred if I had it in there… if there's a way to put $100,000 in my account right now I want to."

67.     However, Tippee 3 was unable to trade due to insufficient funds in his account. In desperation, he contacted Trader 3 and promised to absorb any losses and share in any profits if Trader 3 granted permission to Tippee 3 to use Trader 3's brokerage account.

68.     On Monday, October 10, 2016, Tippee 3 purchased 657 near-expiration, out-of-the-money Illumina put options contracts in Trader 3's brokerage account for $46,483.

69.     On October 11, 2016, Tippee 3 sold all 657 put options contracts, realizing $1,013,834 in profits.  Then, $900,000 of the proceeds was transferred to a bank account controlled by Tippee 3, and Trader 3 retained the balance as his share of the profits.

**Blakstad Rewards Bustos After the Tip**

70.     After Illumina's October 10, 2016 preliminary revenue announcement, Blakstad continued to pay for Bustos' participation in social events, but at an even more extravagant level.

71.     Blakstad arranged and paid for a trip to New York over the 2016 Thanksgiving holiday for Bustos and several of her friends.  Blakstad spent nearly $35,000 for first-class airfare, hotels, and meals for every member of the traveling party, including a $7,500 meal at New York's upscale restaurant Per Se.

**The August 1, 2017 Earnings Announcement**

72.     In advance of Illumina's August 1, 2017 earnings announcement, Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance for the second quarter of 2017.  In turn, Blakstad traded in highly speculative Illumina securities and tipped Tippee 1, Tippee 2, and Tippee 4 material nonpublic information, all of whom also traded in Illumina securities.

73.     After market close of business on August 1, 2017, Illumina announced revenue of $662 million, $19 million higher than previously issued guidance and Wall Street estimates.  The

following day, Illumina's stock price closed at $197.85, which was $25.55, or 14.8%, higher than the previous day's closing price of $172.30.

74.    As a result of trading on the information, Blakstad, Tippee 1, Tippee 2, and Tippee 4 generated illegal profits of approximately $1,243,002, $311,900, $21,714, and $6,088, respectively.

### Bustos Tips Blakstad

75.    In advance of the after-market-close August 1, 2017 earnings announcement, Bustos was in possession of material nonpublic information concerning Illumina's financial performance for the second quarter of 2017.

76.    Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance in advance of Illumina's August 1, 2017 earnings announcement.

77.    Between July 25 and July 28, 2017, Bustos and Blakstad exchanged 12 telephone calls.

### Blakstad Again Conceals his Illumina Securities Trading

78.    On August 1, 2017, Blakstad purchased 7,250 shares of Illumina for $1,247,753 through an account of Hedge Fund 2, which was controlled by Trader 1.

79.    Also on August 1, 2017, Blakstad purchased 890 Illumina near-expiration, out-of-the-money call options contracts for a cost of $249,199 through an account in the name of Hedge Fund 3, an entity also controlled by Trader 1.

80.    Blakstad funded these purchases in part through $725,000 transferred to him from friends and associates between July 26 and 28, 2017, and the rest on margin.

81.    On August 2, 2017, Hedge Fund 2 sold all of Blakstad's Illumina shares for a realized profit of $155,677, and Hedge Fund 3 sold all of Blakstad's call options for a realized

profit of $1,087,325 – a combined profit of $1,243,002.  Trader 1 transferred all of the original

capital and nearly all of the profits back to Blakstad on August 4, 2017, retaining $62,140 for

himself.

**Blakstad Tips Tippee 1**

82.     Blakstad tipped Tippee 1 material nonpublic information concerning Illumina's

financial performance prior to Illumina's August 1, 2017 earnings announcement.

83.     On July 31, 2017, at approximately 9:35 AM EST, Blakstad called Tippee 1 and

the two spoke for more than one minute.

84.     That same day, at approximately 9:51 AM EST, Tippee 1 placed a purchase order

through his stockbroker for the first of a series of Illumina call options trades.

85.     In total, between July 31 and August 1, 2017, Tippee 1 purchased 345 both in-the-

money and out-of-the-money, near-expiration Illumina call options contracts for $160,696.

86.     On August 2, 2017, the day after the announcement, Tippee 1 sold all 345 call

options contracts, realizing profits of $311,900.  The following day, Tippee 1 wrote a $100,000

check payable to Blakstad's company, Midcontinental Petroleum.

**Blakstad Tips Tippee 2**

87.     Blakstad tipped Tippee 2 material nonpublic information concerning Illumina's

financial performance prior to Illumina's August 1, 2017 earnings announcement.

88.     On August 1, 2017, between approximately 2:30 PM EST and 3:46 PM EST,

Blakstad and Tippee 2 spoke by telephone four times.  Immediately after ending a call with

Blakstad at approximately 3:48 PM EST, Tippee 2 purchased 1,000 Illumina shares for

$171,937.

89.     On August 2, 2017, Tippee 2 sold all 1,000 Illumina shares and realized profits of $21,714.

90.     On December 15, 2017, Tippee 2 wired $100,000 to Blakstad's company, Northern Alternative Energy Shaokatan.

### Blakstad Tips Tippee 4

91.     Blakstad tipped Tippee 4 material nonpublic information concerning Illumina's financial performance prior to Illumina's August 1, 2017 earnings announcement.

92.     Between July 27 and the afternoon of August 1, 2017, Blakstad and Tippee 4 communicated at least 16 times via telephone, including three separate conversations on July 27 totaling nearly 98 minutes.

93.     On August 1, 2017, at approximately 3:31 PM EST, Blakstad and Tippee 4 spoke for more than one minute.  Less than one minute after ending the call, Tippee 4 called his stockbroker.  Three minutes later, Tippee 4 purchased 300 Illumina shares for $51,855.

94.     Following the August 1, 2017 earnings announcement, Tippee 4 sold all 300 Illumina shares and realized profits of $6,088.

### The July 30, 2018 Earnings Announcement

95.     In advance of Illumina's July 30, 2018 earnings announcement, Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance for the second quarter of 2018.  In turn, Blakstad tipped Tippee 1, Tippee 2, and Tippee 4 material nonpublic information, all of whom traded in Illumina securities.

96.     After market close on Monday, July 30, 2018, Illumina reported its financial results for the second quarter of 2018.  Specifically, Illumina reported revenue of $830 million, which was approximately $43 million above Wall Street estimates.  On July 31, 2018, Illumina's

stock price closed at $324.36, which was $35.12, or more than 12%, higher than the July 30 close price.

97.     As a result of trading on the information, Tippee 1, Tippee 2, and Tippee 4 generated illegal profits of approximately $59,092, $69,236, and $29,291, respectively. Additionally, Tippee 4 avoided losses of $14,080.

**Bustos Tips Blakstad**

98.     In advance of the July 30, 2018 earnings announcement, Bustos was in possession of material nonpublic information concerning Illumina's financial performance for the second quarter of 2018.

99.     Bustos tipped Blakstad material nonpublic information concerning Illumina's financial performance in advance of Illumina's July 30, 2018 earnings announcement.

100.     Between July 24 and 25, 2018, Bustos and Blakstad exchanged 10 telephone calls, followed by two additional calls on the morning of July 30.

**Blakstad Tips Tippee 1**

101.     Blakstad tipped Tippee 1 material nonpublic information concerning Illumina's financial performance prior to Illumina's July 30, 2018 earnings announcement.

102.     On Sunday evening, July 29, 2018, after three unsuccessful attempts, Blakstad spoke with Tippee 1 via telephone for approximately one minute.

103.     The next morning, at approximately 9:29 AM EST, one minute before market open, Tippee 1 called his stockbroker.  During that call, Tippee 1's stockbroker entered an order in the account of Tippee 1 to buy Illumina call options.

104.     In total, Tippee 1 purchased 185 out-of-the-money Illumina call options contracts for $89,204.

105.    Between July 31 and August 1, 2018, within days after the announcement, Tippee 1 sold all 185 Illumina call options and realized profits of $59,092.

**Blakstad Tips Tippee 2**

106.    Blakstad tipped Tippee 2 material nonpublic information concerning Illumina's financial performance prior to Illumina's July 30, 2018 earnings announcement.

107.    On Friday, July 27, 2018, at approximately 11:57 AM EST, Tippee 2 called Blakstad and the two spoke for approximately 46 minutes.  Within minutes of ending the call, Tippee 2 called his stockbroker.

108.    On Monday July 30, 2018, Tippee 2 called his stockbroker again who immediately entered an order to purchase call options on behalf of Tippee 2.  In total, Tippee 2 purchased 70 out-of-the-money Illumina call options for $51,549.

109.    On July 31, 2018, Tippee 2 sold all 70 Illumina call options and realized profits of $69,236.

**Blakstad Tips Tippee 4**

110.    Blakstad tipped Tippee 4 material nonpublic information concerning Illumina's financial performance prior to Illumina's July 30, 2018 earnings announcement.

111.    On Monday, July 30, 2018, at approximately 11:16 AM EST, within minutes of ending a call with Bustos, Blakstad called Tippee 4 and the two spoke for nearly a minute.  Two minutes later, Tippee 4 called his stockbroker.

112.    At approximately 11:21 AM EST, Tippee 4's stockbroker entered an order to sell 10 Illumina put options contracts from Tippee 4's account that had been purchased on July 23, 2018.

113.    Minutes later, Blakstad and Tippee 4 spoke again.  At approximately 11:31 AM

EST, within minutes of ending the call with Blakstad, Tippee 4 again called his stockbroker, who

entered Tippee 4's first Illumina call options contract of the day.

114.    In total, Tippee 4 purchased 14 out-of-the-money Illumina call options contracts

for $20,936.

115.    On July 31 and August 7, 2018, Tippee 4 sold all 14 of his call options contracts

and realized profits of $29,291.

116.    Additionally, the market value of the put options contracts Tippee 4 sold on July

30 fell significantly (from $15.00 to $0.92) in response to the announcement; thus, Tippee 4

avoided losses of $14,080.

**Blakstad and Bustos Violated the Federal Securities Laws**

117.    As detailed above, the information concerning Illumina's financial performance

that Bustos provided to Blakstad was material and nonpublic.  A reasonable investor would have

viewed this information as being important to his or her investment decision and as significantly

altering the total mix of information available to the public.

118.    As an employee of Illumina, Bustos owed a duty of trust or confidence to

Illumina's shareholders.

119.    Pursuant to Illumina's Insider Trading Policy, Bustos also owed a duty to

Illumina not to tip material nonpublic information to any other person where such information

may be used to his or her profit.

120.    In breach of her duty owed to shareholders of Illumina, Bustos knowingly or

recklessly tipped Blakstad material nonpublic information concerning Illumina's financial

performance.

121.    Bustos and Blakstad knew or were reckless in not knowing that the information concerning Illumina's financial performance that Bustos provided to Blakstad was material and nonpublic.

122.    Bustos and Blakstad knew or were reckless in not knowing that Bustos had a duty not to tip material nonpublic information concerning Illumina's financial performance to Blakstad.

123.    Bustos and Blakstad knew or were reckless in not knowing that Bustos breached this duty by tipping Blakstad material nonpublic information concerning Illumina's financial performance, while knowing or recklessly not knowing that Blakstad would trade or tip this information.

124.    Bustos received a personal benefit in exchange for tipping material nonpublic information concerning Illumina's financial performance to Blakstad.

125.    Blakstad knew, consciously avoided knowing, was reckless in not knowing, or should have known that Bustos disclosed the information in breach of that duty and that Bustos received a personal benefit.

126.    When Bustos tipped the material nonpublic information to Blakstad, Blakstad assumed the duty to maintain the confidentiality of the information.  Blakstad breached this duty by knowingly or recklessly trading on the material nonpublic information himself and tipping, at various times, the information to Tippee 1, Tippee 2, Tippee 3, and Tippee 4, who then each also traded on the basis of the material nonpublic information.

127.    Blakstad received a personal benefit in exchange for tipping material nonpublic information concerning Illumina's financial performance to Tippee 1, Tippee 2, Tippee 3, and Tippee 4.

128.    Bustos knew or was reckless in not knowing that it was a violation of the securities laws to tip Blakstad material nonpublic information concerning Illumina's financial performance.

129.    Blakstad knew or was reckless in not knowing that it was a violation of the securities laws to trade and to tip the material nonpublic information concerning Illumina's financial performance to Tippee 1, Tippee 2, Tippee 3, and Tippee 4.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

130.    The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-129 inclusive, as if they were fully set forth herein.

131.    By engaging in the conduct described above, from at least April 2016 through July 2018, Defendants, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or the facility of national securities exchanges, in connection with the purchase or sale of securities, knowingly or recklessly:

a.    employed devices, schemes, or artifices to defraud;

b.    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

c.    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

132.    By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10b-5], thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

## I.

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Ordering Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## III.

Ordering Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Respectfully submitted,

Date:   July 10, 2019

Christopher R. Kelly
Jennifer C. Barry*
Brendan P. McGlynn*
Patricia A. Paw*
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
(215) 597-3741 (Kelly)
KellyCR@sec.gov

*Not admitted in the S.D.N.Y.